IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 4:21cr8/MW

JIMMY LEE HIGHSMITH
_____/

## TRIAL BRIEF

COMES Now, the United States of America, by and through the undersigned Assistant United States Attorneys, and represents that it has previously discussed the legal and factual issues with the defense pursuant to N.D. Loc. R. 26.2 with respect to those matters set forth in the rule. Counsel now files this report as required by N.D. Loc. R. 26.2 as follows:

A. Discovery Material Provided

  1. Government

The government represents that it has generally provided the defendant with all discovery required by the rule; including any known *Brady* material. It further represents that more discovery was provided than is required by the rule; this includes supplemental packets of discovery. Further, the crime scene was open for visitation by the defense in advance of the trial date, which was taken advantage of by counsel for the defendant.

1

2. Defendant

The defendant has not presented the name of any witness nor presented any evidence or reciprocal discovery to the government.

B. <u>Stipulations as to Evidence and Issues Regarding Jury Selection</u>

There are no anticipated stipulations as to evidence.

Because of the nature of the instant indictment, and the correctional institutions located within or near the Tallahassee Division of the Northern District of Florida, the government requests the Court ask specific questions during voir dire, in addition to its normal inquiry, as it relates to correctional institutions and potential bias or preconceived ideas.  This would include inquiring as to (a) employment at a correctional institution, (b) relatives who are employed at a correctional institution, (c) any strong feelings regarding a correctional officer as a charged defendant or a prison inmate as a crime victim, (d) whether anyone believes it is acceptable to sexually abuse a prison inmate based upon his/her institutional status, and (e) whether anyone would not be able to find a correctional officer guilty for having sexual contact with a prison inmate if the inmate did not object to the sexual contact even though the law (as provided by the Court) prohibits any such sexual contact regardless of consent between the parties.

C. <u>Case Summary</u>

The government anticipates the trial evidence will reveal the following in relation to an ongoing pattern of sexual abuse of wards by the defendant: The defendant, a federal correctional officer, is charged with sexually abusing three female inmates he supervised during the service of their sentences at the Federal Correctional Institution in Tallahassee, Florida ("FCI Tallahassee").

<u>Victim T.W. – Count One</u>

Victim T.W. was incarcerated at FCI Tallahassee from approximately June 2013 to April 2017. T.W.'s first interaction with the defendant was in the spring of 2014. On that day, the defendant asked T.W. questions about her breasts, whether she had ever been intimate with a black man, and whether she "like[s] to suck dick." Later, the defendant summoned T.W. to the officer's station—an area generally reserved for officers with no internal surveillance camera, and a bathroom for officer use only—because he saw she was wearing a tongue ring, which is considered contraband in prison. Once T.W. was in the officer station, he summoned her to a closet and asked her if she could "keep a secret," after which the defendant bent over and kissed T.W. on the lips.

Later, the defendant asked T.W. to meet him by the telephone booths in the housing unit after lights out at 11:00 p.m. The defendant left a door open for T.W. and led her into the officer's bathroom. While in the bathroom, the defendant kissed

T.W., put his hands down her pants, and fondled her vagina, after which the two engaged in vaginal intercourse.

About a month later, T.W. was lying in bed one night when another correctional officer told T.W. that she needed to pick up mail from another housing unit. When T.W. arrived at the other unit, she saw the defendant, who handed her a blank envelope and asked her to write her name on it. T.W. complied and, at the defendant's request, hid behind the office door until the defendant locked all of the doors so that they would not be discovered. The defendant directed T.W. into the officer's bathroom where she performed oral sex on him, after which they engaged in vaginal intercourse until the defendant's completion.

In April 2014, the defendant rotated back to the housing unit where T.W. was residing. On April 30, 2014, after 11:00 pm, the defendant was making rounds in the housing unit when he leaned into T.W.'s bunk and summoned her to the officer station. Minutes later, T.W. entered the officer station and saw the defendant, who looked at the area between her legs and said, "Let me see it." T.W. complied by pulling her pants down and displaying her vagina. T.W. was concerned that the other inmates were suspicious and would find the defendant and T.W. alone in the officer station, but the defendant assured her not to worry. T.W. then performed oral sex on the defendant, and the two engaged in vaginal intercourse (the defendant wore a condom during said intercourse).

During the intercourse, T.W. saw other inmates peek through the officer station window, so T.W. pushed the defendant off her, got dressed, and quickly left the officer station. When T.W. returned to the housing unit, other inmates accused her of having sex with an officer. T.W. confronted the defendant about it, but he assured her not to worry. Surveillance footage from FCI Tallahassee on April 30, 2014, corroborates T.W. and the defendant's joint presence in the officer's station for approximately nine minutes until they were caught by a group of inmates peeking through the window. The next day, T.W., under the pressure of anxiety related to potentially being caught engaging in sexual acts, reported the incident to Bureau of Prisons ("BOP") staff. Upon coming forward, T.W. was placed in solitary confinement.[1]

---

[1] Years ago, prior to the undersigned being assigned to investigate allegations against this defendant, the United States Attorney's Office declined to prosecute the defendant for his crimes against T.W. based on the high burden placed upon the government in a criminal trial. The case was obviously reopened and reinvestigated for more details, more victims have come forward, and the parties are now prepared for a jury trial on the merits. The undersigned, who take a broad view of discovery obligations, provided materials to the defense in advance of trial that made clear there was a prior declination by the United States Attorney's Office. That said, the undersigned are cautiously optimistic the defense herein knows the prior "declination" is not something that is admissible at trial. The government's position, which the undersigned submit is well-founded and one the defendant should not dispute, is that the prior declination is not admissible as this jury must decide the merits of the allegations for itself. *See e.g.*, Fed. R. Evid. 401, 403; *Schultz v. Gov't Employees' Ins. Co.*, No. 1:15CV172-MW/GRJ, 2016 WL 8861701, at *1 (N.D. Fla. Aug. 12, 2016) (Walker, J.) (recognizing that testimony not resolving a factual dispute, but rather intended to reach an ultimate issue of fact, is better left for a lay jury). In the event that the defendant desires to offer evidence regarding, or question a witness about, the prior declination, the government requests the Court require the defendant to notify the Court and the government before doing so, such that the parties may then argue the admissibility and/or propriety of the evidence/question(s). Within the last 24 hours, the defense notified the government that the defendant may attempt to call a government witness from the initial investigation – thus prompting this footnote and recitation of law.

Victim W.J. – Count Two

Victim W.J. was incarcerated at FCI Tallahassee from approximately May 2017 to March 2019. W.J.'s initial interactions with the defendant quickly became inappropriate as the defendant asked where W.J. was from, if she dated black men, and how many kids she had. The first time the defendant inappropriately touched W.J. was when the defendant, who was her unit officer at the time, summoned W.J. to the officer station under the guise of a counselor needing to speak with her. When W.J. entered the officer station, the defendant was alone and proceeded to kiss W.J. on the lips, after which he instructed her not to say anything to anyone.

On or about July 5, 2018, the defendant called W.J. into the officer station again, but this time instructed her to go into the bathroom, pull down her pants, and bend over so that he could sexually penetrate her, which he did. W.J. complied with the defendant's request because she did not want to receive an infraction for not following orders, which would delay her ability to get home to her children. A few months later, on September 3, 2018 (Labor Day), while all of the inmates were being fed holiday meals outside the unit, the defendant asked W.J. to stay behind in the officer station. Again, W.J. complied, and the defendant provided her food served only to staff, after which he directed her to the officer station bathroom and penetrated her vaginally again. In the span of approximately sixteen (16) months, W.J. and the defendant engaged in sexual intercourse approximately ten (10) or more

times.  W.J. reported the sexual assaults to BOP staff after the defendant was escorted from, and ordered not to return to, FCI Tallahassee in late September 2018 following an allegation of sexual assault upon another inmate.

### Victim Z.C.R. – Count Three

Victim Z.C.R. was incarcerated at FCI Tallahassee beginning in March 2017. Z.C.R. first interacted with the defendant when he was her unit officer, and she went to the officer station to retrieve personal sanitary products and the defendant asked her if she used to walk OBT Street in Orlando, Florida, which Z.C.R. took as a reference to prostitution.  Sometime after that, Z.C.R. again went into the officer station to retrieve supplies; while there, the defendant blocked the door to exit the officer station, grabbed her by the jaw, and kissed her on the lips.

In August 2018, the defendant called Z.C.R. out of the housing unit to follow him to the officer station, to which Z.C.R. complied.  Again, the defendant blocked Z.C.R. from leaving the officer station, kissed her, and touched her breasts with one of his hands whilst trying to fondle her vagina with the other.  Z.C.R. stopped the defendant from going any further.  She was not compliant with the defendant's sexual overtures.

Thereafter, on September 13, 2018, Z.C.R. was sleeping in her bunk when the defendant woke her up and told her a counselor wanted to see her in the officer station.  When Z.C.R. got to the officer station, there was no such counselor, and the

defendant grabbed Z.C.R. by the arm and took her inside the bathroom. Once in the bathroom, the defendant locked the door, grabbed her hair, and forced her to perform oral sex on him. Z.C.R. had tears well up in her eyes. The defendant then attempted to get Z.C.R. standing up to vaginally penetrate her from the rear, but she resisted, so the defendant pushed her onto the toilet. Z.C.R. heard radio traffic outside the bathroom and told the defendant to stop, but he told her to "shut up."

The defendant turned on the water from the sink to mask the noise emanating from the bathroom, took off his belt, removed Z.C.R.'s left shoe and pant leg, forced her leg up, and began penetrating her vaginally until his completion into a tissue. Suspecting there was another correctional officer outside the bathroom, the defendant ordered Z.C.R. to stay put. Disregarding his order, Z.C.R. followed the defendant out of the bathroom, but was stopped by another correctional officer who realized in short order that Z.C.R. was in the bathroom with the defendant. Thereafter, Z.C.R. was escorted to the lieutenant's office. Surveillance footage from FCI Tallahassee on September 13, 2018, corroborates Z.C.R. and the defendant's joint presence in the officer station for over twenty (20) minutes until Z.C.R. was escorted by another correctional officer to the lieutenant's office. Upon coming forward, Z.C.R. was placed in solitary confinement.

On February 2, 2021, a federal grand jury sitting in the Northern District of Florida returned an indictment charging the defendant with three counts of sexual

abuse of a ward pursuant to Title 18, United States Code, Section 2243(b). The anticipated trial evidence will be admitted in the form of victim testimony, certified records, video footage, and law enforcement officer testimony. The defense, without question, believes the facts to be different than those recited above and has requested the instant trial by jury.

D. <u>Legal Issues and Discussion</u>

There are no anticipated legal issues. The defendant has not filed any pretrial motions. The government anticipates all the trial evidence will be admitted through proper witnesses and/or proper record certifications that have not been challenged.

According to the statute and available pattern jury instructions, there are three or four elements of sexual abuse of a ward. They are:

(1) The defendant knowingly engaged in a sexual act (or attempted to do so);
(2) At the time, the victim was in official detention;
(3) At the time, the victim was under the custodial, supervisory, or disciplinary authority of the defendant; and
(4) The defendant's actions took place in a Federal prison or facility under federal contract.

*See* 18 U.S.C. § 2243(b); Pattern Criminal Jury Instructions, 5th Cir. 2.82D (2019). Some circuits leave out the fourth element. *See, e.g.*, Federal Criminal Jury Instructions, 7th Cir. 2243(b)[1] (2019 ed.). This discrepancy is presumably because, in situations such as the instant case, the fourth element (sexual act occurred

in a Federal prison) is redundant with the second element (victim was in official detention).

To satisfy the first element, the government must prove beyond a reasonable doubt that the defendant knowingly engaged in a sexual act with the victim. The definitional section of the statute defines "sexual act" as:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C.A. § 2246(2). A "sexual act" is distinguished from lesser "sexual contact" as defined in § 2246(3). However, the government need not necessarily prove that the sexual act actually occurred; the statute also criminalizes "attempt[ing] to do so." *Id.* § 2243(b); *cf. United States v. Kenyon*, 397 F.3d 1071, 1077 (8th Cir. 2005) ("Actual penetration is not required to commit the violations charged against

Kenyon, however, because the government can meet its burden under § 2241 if it proves a sexual act or an attempted sexual act.").[2]

As for the second element, the term "official detention" includes "detention by a Federal officer or employee" following an arrest, surrender, charge, or conviction of an offense; civil commitment; and federal custody for the purposes of "transportation, medical diagnosis or treatment, court appearance, work, and recreation." 18 U.S.C.A. § 2246(5). It does not include probation, parole, or release on bail. *Id.* This element is straightforward to prove, and it is generally satisfied if the victim was a federal inmate at the time of the alleged offense. Showing that the victim was an inmate of a federal prison at the time of the alleged offense also generally satisfies the requirement that the conduct occur "in a Federal prison." *Id.* § 2243(b).

The third element of a § 2243(b) offense is also straightforward. It is generally satisfied if the defendant was a federal prison guard or corrections officer at the institution where the victim was detained. *See United States v. Solorzano*, 2008 WL 5451040, at *6 (D.N.J. Dec. 30, 2008). Even if the defendant was not a guard, "if [he] was delegated power over the oversight or the confinement and/or restraint of inmates . . . at the time he engaged in sexual activity with these inmates, then his

---

[2] As the Eighth Circuit noted in a case involving § 2243(a), "[n]o physical evidence [is] necessary: a victim's testimony alone can be sufficient to support a guilty verdict." *United States v. Stoney End of Horn*, 829 F.3d 681, 685 (8th Cir. 2016) (internal quotation marks omitted).

11

conduct [falls] squarely within the plain language of section 2243(b)." *Id.* at *4 (applying § 2243(b) to an x-ray technician in a prison medical unit).

Importantly, lack of consent is not an element of sexual abuse of a ward under § 2243(b). The statutory text only requires the government show that the defendant engaged in a sexual act with an inmate *knowingly*, regardless of the mindset or consent of the alleged victim. *Cf. Boxer X v. Harris*, 459 F.3d 1114, 1119 (11th Cir. 2006) (Barkett, J., dissenting from the denial of rehearing en banc) ("The power imbalance inherent in prison conditions is precisely what accounts for statutes that criminalize even consensual sexual activity between prisoners and their guards."); *United States v. White Calf*, 634 F.3d 453, 457 (8th Cir. 2011) (noting that for § 2243(a) prosecutions, the statute "makes clear that the government's burden to prove scienter . . . is limited to proving the defendant 'knowingly engage[d] in a sexual act.'").

Consent is thus axiomatically not a defense to 18 U.S.C. § 2243. *See United States v. Smith*, 336 F. App'x 978, 985 (11th Cir. 2009) (citing 18 U.S.C. § 2243 and stating that it criminalizes sexual acts between a prison official and a prisoner, regardless of consent). In *United States v. Benais*, 460 F.3d 1059, 1064 (8th Cir. 2006), the Eighth Circuit noted that section 2243 is the "statutory rape" provision of federal law that "requires no examination of . . . consent" even though it was in the context of a minor's consent under section 2243(a). A recent case in the Eastern

District of New York confirmed that a victim's consent is irrelevant to § 2243(b) convictions—but if the inmate did *not* consent, then the defendant may be charged with other sexual abuse offenses as well. *See United States v. Martinez*, 388 F. Supp. 3d 225, 231 (E.D.N.Y. 2019); *see also United States v. Hollingsworth*, 2010 WL 4363700 (E.D.Ky. Oct. 15, 2010).

      RESPECTFULLY SUBMITTED this 3rd day of December, 2021.

JASON R. COODY
Acting United States Attorney

*/s/ David L. Goldberg*
DAVID L. GOLDBERG
Assistant U.S. Attorney
Member of the Maryland Bar
21 E. Garden Street, Suite 400
Pensacola, FL  32502
(850) 444-4000

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney
Florida Bar No: 1004725
111 N. Adams Street, Fourth Floor
Tallahassee, FL 32301
(850) 444-4000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on December 3, 2021, for service on all parties herein.

*/s/ David L. Goldberg*
DAVID L. GOLDBERG
Assistant U.S. Attorney